JEWETT, RECEIVER of the Erie Railway Company, *vs.* BOWMAN AND DRINGER.

1. It is a violation of an injunction restraining a defendant from disposing of property, to deliver the property, though sold previously to the service of the injunction.

2. Where, on a bill for discovery and account, and general relief against an agent of the complainant and a third party, charging collusion between them, and an attempt fraudulently to obtain property of an estate held in trust by the complainant, (an officer of the court, acting under its control and direction,) an injunction was issued against the third party, restraining him from disposing of the property sold to him by the agent, a motion to dissolve the injunction made on such third party's answer was denied, on the ground (among others) that the co-defendant, the agent, had not answered.

Bill for relief.    Motion for attachment against Dringer for contempt for violation of injunction, and motion for a receiver, and motion on Dringer's behalf to dissolve the injunction.    On bill and affidavits and petition of complainant, and affidavits and Dringer's answer.

*Mr. Cortlandt Parker*, for complainant.

*Mr. S. Tuttle*, for Dringer.

THE CHANCELLOR.

The bill is filed by Hugh J. Jewett, receiver appointed by this court for the creditors and stockholders of the Erie Railway Company, against Henry Bowman, late purchasing agent of the complainant, and Sigmund Dringer, for discovery and account and general relief.    It prays an injunction to restrain Dringer from disposing of any materials of the Erie Railway Company received by him, and for the return thereof to the complainant, or that they may be applied on the amount which, on the accounting, may be found due from him to the complainant.    The bill states that Bowman, being the purchasing agent of the complainant, in violation of his instructions and in fraud upon the trust, and in collusion with Dringer, caused to be delivered to the latter as upon sale to him, very large amounts of valuable waste and other materials of the railway company; and the object of the suit is, the protection and indemnity of the trust estate to which the goods in question belonged.    On the filing of the bill, an injunction was issued according to the prayer, and served on Dringer. Subsequently, the complainant filed his petition, alleging that Dringer had violated the injunction, and praying an attachment against him for contempt, and the appointment of a receiver.    On filing the petition, an order to show cause why the prayer of the petition should not be granted, was made. Dringer has answered, and moves to dissolve the injunction. Bowman has not answered.

The circumstances under which Dringer obtained the goods in question, are, as they appear by the affidavits, such as to lead to the conclusion that the goods were obtained by fraudulent collusion between him and Bowman, and other employees of the complainant. The large number of tons of old car wheels, for which, under the regulations, he bid in July, 1875,. $22 a ton, were not delivered to him, because the complainant was not satisfied as to his pecuniary responsibility. The terms were fifteen per cent. in cash at the time of the award, and the rest in cash on delivery. They were, however, delivered to him immdiately afterwards by Bowman, at $19 a ton, making a difference of $5100 in the amount realized by the complainant on the sale; the amount sold and delivered being seventeen hundred tons. Dringer says the difference in price was due to the greater stringency in the terms, the latter sale being, as he says, for cash on delivery. According to one of the affidavits, the only one which speaks on the subject, Bowman gave another reason for the difference, the fall in the market price of iron. The transactions by which Dringer became possessed of the property in question in this suit, as they are disclosed by the affidavits, not only show disregard of the regulations of the complainant, made for the protection of the property committed to his charge, in the sales to Dringer, but they show, also, knowledge on his part of the existence of the regulations, and that he knew that his purchases were made in violation thereof. They further show collusion between him and Bowman, and other employees of the complainant, fraudulently to obtain the property of the trust estate. It is unnecessary to particularize. It will be sufficient to refer to the steel in bars abstracted, at his request, from the racks in the shop, and loaded in the cars among, and in loading placed underneath, scrap metal of comparatively small value, and not accounted for, except at the price of the latter material; (of this steel, about one hundred and forty bars, all, except three or four from ten to twelve feet in length, are sworn to); the belting of the value of over $1100, received by him according to the affidavits, but which he denies that he received;.

the fire-wood taken from the company's wood piles at the shops, and placed in such a manner on cars loaded with material for him as to conceal the character of the material; and the shears, the presses, and the stove made for him at the shops, and the oil received by him from the same place, without account therefor. It is a notable circumstance that the shears and presses were not sent to him directly, but were sent in boxes, directed to an employee of the complainant, at Paterson, in Dringer's care. Dringer has violated the injunction. He admits that after it was served on him, he sent away large amounts of the material received from the Erie shops, but alleges that it had been sold by him previously to the service of the injunction. His counsel states that it was by his advice that Dringer sent the goods away, he not regarding the delivery of the goods, if sold previously to the service of the injunction, as a violation of the injunction. The injunction restrained Dringer from disposing of any of the materials received from the Erie shops. The excuse is insufficient. Moreover, it is a noteworthy circumstance in this connection, that though the material sent away after the service of the injunction was, as Dringer alleges, sent to dealers in Philadelphia, it was directed to those persons at Jersey City, where, as far as appears, they neither did business nor resided, and no explanation is offered. The rule to show cause will be made absolute, and a receiver of the property will be appointed.

In addition to the foregoing considerations there is still another, inducing me to appoint a receiver. The motion to dissolve the injunction will be denied. If there were no other reason, the fact that the answer of Bowman is not in, would, under the circumstances, be sufficient ground for refusing to dissolve the injunction. The transactions between Bowman and Dringer are of such a character, that especially in view of the developments above referred to, I should not be willing to dissolve the injunction, at least until after Bowman shall have answered, and, inasmuch as the injunction is to stand, the interests of all parties require that a receiver

should be appointed. I am the more ready to take this course, because the property is part of a trust estate which the complainant is managing under the control and direction of this court, and the conduct of Dringer in regard to it is at least open to the gravest suspicion, and, on the affidavits, it appears to have been absolutely fraudulent. A very large indebtedness has been contracted by him, through the agent of the complainant, with the full knowledge, on Dringer's part, that the sales from which the indebtedness arose were made to him, if not surreptitiously, yet in violation of the regulations of the complainant, made for the protection of the trust estate, in reference to the subjects of the sales. Dringer, in these purchases, was aware that he was dealing with an agent who was transcending his authority and violating his obligations. The character of these dealings is evidenced by the fact, that though Dringer's bid was rejected because the complainant was not satisfied as to his pecuniary responsibility, and Bowman was directed to re-advertise for bids upon the property, the latter disregarded his instructions, and sold the property to Dringer without re-advertisement, and without authority, and without reporting the sale, for a less price than Dringer had bid. It is manifested, also, by the further circumstance that, notwithstanding the fact that the complainant was unwilling to give credit to Dringer, Bowman sold property to him on credit, without authority from the complainant, until at the filing of the bill Dringer was found to be indebted to the trust estate for goods of which the complainant had an account, to the amount of $25,233.11, which sum was swelled by subsequent discoveries of deliveries of goods to him, of which the complainant had no account, and of which no account had been given to him, to the sum of $38,655.31, which increased amount of indebtedness Dringer acknowledges.